UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


HENRY LOUIS PERSON,

        Petitioner,

v.                                 Case No. 2:03-cv-217
                                 HON. RICHARD ALAN ENSLEN

GERALD HOFBAUER,

        Respondent.

_____/


### REPORT AND RECOMMENDATION

        Petitioner Henry Louis Person filed this petition for writ of habeas corpus challenging the validity of his state court jury conviction for armed robbery, assault with a dangerous weapon, and felony firearm. Petitioner was convicted by a jury on March 3, 2000, and on March 30, 2000, was sentenced to prison terms of 15 to 45 years for the armed robbery conviction, 2 years 6 months to 4 years for the assault conviction, and 2 years consecutive for the felony firearm conviction.

        Petitioner maintains that his conviction was obtained in violation of his federal rights. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

Petitioner has raised the following issues in his petition:[1]

I.  Petitioner's Fourteenth Amendment right to a fair trial where the jury's deliberation was tainted by admission of evidence that he might have been involved in other crimes.
II.  Petitioner's Fourteenth Amendment right to a fair trial by the prosecutor vouching personally for the credibility of the witness and evidence.

One of the victims of the robbery, Gerald Davis Craig, testified regarding the lineup and identified petitioner as the robber.  Craig used "we" when discussing the proceudrures employed during the lineup.  For example Craig testified:

> A:  It was a small room divided from the lineup space by a mesh, metal mesh.  The area that the people were lined up in was well-lighted.  We were in the shadow.  We were brought in in a single file and set on the bench facing the lineup.  There were police officers on either side of each of us.  I don't recall exactly how many people were there at the time.
>
> Q:  Mr. Craig, when I'm asking you these questions, I want you to respond to them as you experienced them.
>
> A:  Okay.
>
> Q:  And leave out any number of other persons out of your testimony unless you're directly requested.  Is that fair?

Trial transcript, vol. II at 252.  Similarly, victim Nancy Lee Kramer used "we" or "us" when testifying about the lineup.  Kramer testified:

> A.  I assume that it's a normal structure for a lineup.  I've never been involved in one before but it was a -- a -- there was a wooden bench area and a glassed-in window for viewing.  There wasn't anybody on the other side of the window at that time when we filed in.  They had police officers separate each one of us people that were involved in this lineup so none of us could be -- we were all seated.  I remember

---

[1]In his petition, petitioner states that his claims are Sixth Amendment violations.  Petitioner has filed a motion to amend the petition to correct his mistake and assert that these are Fourteenth Amendment violations.  By separate order of this Court, petitioner's motion has been granted.

that was one thing that stuck in my mind, that we were seated separately.

Trial transcript, vol. II at 291.

The prosecutor argued during his closing statement that:

There was an effort made by people representing each party's interest, the lawyer appointed on behalf of Mr. Person and one of my coworkers at the Prosecutor's office, to arrange six selected individuals in a way that was neutral.

They picked the way that these people were going to be arranged in line, gave them their several numbers and Detective Setla made some Polaroid copies of that in order to make a memorandum of what it was that was done in order to prepare these witnesses to see the suspect, along with others.

Trial transcript, vol. II at 376-377.

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160

- 3 -

F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.*

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by

- 4 -

a state court is presumed to be correct.  The petitioner has the burden of rebutting the presumption

of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*,

161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 577 U.S. 1040 (1999).

Respondent argues that petitioner procedurally defaulted these claims.  When a state-

law default prevents further state consideration of a federal issue, the federal courts are ordinarily

precluded from considering that issue on habeas corpus review.  *See Ylst v. Nunemaker*, 501 U.S.

797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  The Sixth Circuit applies a four-part test to

determine whether a claim is procedurally defaulted: (1) the court must first determine that there is

a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to

comply with the rule; (2) the court must decide whether the state courts actually enforced the state

procedural rule; (3) the default must be an "independent and adequate" state ground on which the

state can rely to foreclose review of a federal constitutional claim; and (4) if the foregoing are met,

the petitioner must demonstrate cause for his failure to follow the rule and that he was actually

prejudiced by the alleged constitutional error.  *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001)

(citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Greer v. Mitchell*, 264 F.3d 663,

672 (6th Cir. 2001).  There may be an "exceptional case in which exorbitant application of a

generally sound rule renders the state ground inadequate to stop consideration of a federal question."

*Lee v. Kemna*, 122 S.Ct. 877, 878 ( 2002).  A petitioner may also excuse a default by making a

colorable claim of innocence; that is, he has shown that any constitutional error "probably" resulted

in the conviction of one who was actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing

*Murray v. Carrier*, 477 U.S. 478, 495 (1986)).   This exception is reserved for a very narrow class

of cases, based on a claim of "new reliable evidence."  *Schlup*, 513 U.S. at 315, 324.

- 5 -

Petitioner procedurally defaulted his first claim.  The Michigan Court of Appeals

stated:

> Defendant first contends that he was denied a fair trial and the
> effective assistance of counsel because evidence was improperly
> admitted at trial that implicated him in the commission of other
> crimes.  Defendant claims that at trial witnesses made several
> references to the instant victims' and other individuals' attendance at
> lineups involving defendant, thus raising the improper inference that
> defendant was a suspect in other crimes.
>
> This Court reviews a trial court's ruling on the admissibility of
> evidence for an abuse of discretion.  *People v. Starr*, 457 Mich 490,
> 494; 577 NW2d 673 (1998).  Because defendant did not preserve this
> issue, he must demonstrate that a plain error affected his substantial
> rights.  *People v. Carines*, 460 Mich 750, 763; 597 NW2d 130
> (1999).
>
> We find no error in the admission of the testimony concerning the
> lineups at which defendant was identified or in the content of the
> testimony itself.  Even if the testimony defendant challenges on
> appeal was unfairly prejudicial and improperly admitted at trial,
> defense counsel's failure to object to it at trial forfeited the issue for
> appellate review.  *People v. Carter*, 462 Mich 206, 215; 612 NW2d
> 144 (2000).  An unpreserved nonconstitutional error is presumed
> harmless and does not merit reversal unless the error resulted in the
> conviction of an innocent defendant or seriously affected the fairness,
> integrity or public reputation of the judicial proceedings. *Carines*,
> *supra* at 774.  In this case, the admission of the statements did not
> offend the judicial process or result in a conviction of an innocent
> defendant because the jury was presented with ample, properly
> admitted evidence from which it could find that all elements of the
> charged crimes were proved beyond a reasonable doubt.  *People v.*
> *Wolfe*, 440 Mich.  508, 515-516; 489 NW2d 748, amended on other
> grounds 441 Mich 1201 (1992).

The Michigan Court of Appeals noted that petitioner failed to preserve the issue for appeal, but

reviewed the argument only to consider whether petitioner's rights were substantially affected by the

asserted error.  Even though the court of appeals applied a limited review of the claimed error to

determine whether it affected the outcome, petitioner's failure to object is still considered a

procedural default.  *See Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989); *accord Federico v. Yukins*, No. 93-2424, 1994 WL 601408, at *3-*4 (6th Cir. Nov. 2, 1994), *cert. denied*, 514 U.S. 1038 (1995).   The limited review by the court of appeals did not waive the procedural default because it was a separate and alternative holding apart from the determination of the procedural default.  *See Harris*, 489 U.S. at 264, n.10; *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991); *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Further, petitioner has not established cause or prejudice for his procedural default.

Moreover, the issue raises a question about the admissibility of evidence under Michigan law.  However, "such an inquiry . . . is no part of a federal court's habeas review of a state conviction."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984).  Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights.  *Estelle v. McGuire*, 502 U.S. at 68.  A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the

denial of fundamental fairness, and therefore, a violation of due process. *Brown, III v. O'Dea*, 187

F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

> "The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

In the opinion of the undersigned, the admission of the alleged improper testimony

did not rise to a constitutional issue, but was merely a matter of state law.

Similarly, it appears that petitioner procedurally defaulted his second claim involving

the lineup. The Michigan Court of Appeals, however, addressed the merits of that issue finding that

the testimony and the prosecutor's argument were not admitted in error. At least arguably, the

Michigan Court of Appeals did not find that the issue was defaulted. The court stated:

> Defendant's final assertion of error concerns testimony about, and the prosecutor's argument with respect to, both defense counsel's and the prosecutor's involvement in the arrangement of the pretrial lineup. Defendant suggests that advisement of the jury regarding the attorneys' presence implicitly approved the lineup's fairness and precluded the jury from reaching a conclusion that the lineup was conducted unfairly and that it was unduly suggestive. This contention is also without merit.

> The prosecution is prohibited from vouching for the credibility of a witness. *People v. Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995); *People v. Schutte*, 240 Mich App 713, 722; 613 NW2d 370 (2000). However, the prosecution may remark on the evidence admitted at trial and all reasonable inferences that can be drawn from the evidence as they relate to the prosecution's theory of the case. *Bahoda, supra* at 282. A prosecutor's remarks cannot be viewed in isolation-the scope of appellate review must include the context in which the remarks were made. *Schutte, supra* at 721. Remarks that might otherwise be improper do not necessarily require reversal when they are made in response to issues raised by a defendant. *Id.*

> At trial, defendant averred a claim of misidentification largely premised on his light complexion and the fact that the other lineup participants had darker complexions. The weight, not the admissibility, of identification evidence is at issue when a lineup is comprised of participants whose physical characteristics differ significantly from a defendant's physical characteristics, and the defendant believes that these physical differences prejudiced the witnesses' identification. *People v. Sawyer*, 222 Mich App 1, 3; 564 NW2d 62 (1997); *Benson*, *supra* at 438. The prosecution properly advanced testimony and argument tending to contradict that the lineup was unfairly suggestive because this evidence and argument directly responded to defendant's emphasis on the lineup's suggestiveness. *Schutte*, *supra* at 721.

To the extent that petitioner raises this issue as a state law issue regarding the admissibility of evidence, petitioner's claim fails to raise a constitutional issue. Moreover, petitioner has failed to show that the Michigan Court of Appeals' decision was unreasonable based upon the facts presented or based upon federal law as stated by the United States Supreme Court. Ultimately, the issue for the Court is whether the prosecutor's conduct denied petitioner a fundamentally fair trial. *Smith v. Phillips*, 455 U.S. 209, 219, 102 S. Ct. 940 (1982). *See also United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994) (adopting test for evaluation of prosecutorial misconduct on direct review); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348 (6th Cir. 1993) (applying similar test to habeas action). Inappropriate remarks or conduct by a prosecutor constitute a matter of constitutional concern only when it is egregious enough to deprive the defendant of a fair trial. *See United States v. Chambers*, 944 F.2d 1253 (6th Cir.), *cert. denied*, 112 S. Ct. 1217 (1992); *United States v. Mohney*, 949 F.2d 1397, 1400 (6th Cir. 1991), *cert. denied*, 112 S. Ct. 1940 (1992); *Paprocki v. Foltz*, 869 F.2d 281 (6th Cir. 1989). The prosecutor merely made an argument against petitioner's claim that the lineup was unduly suggestive. The prosecutor's argument was an appropriate comment on the evidence. The Michigan Court of Appeals' decision did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court of the United States; or result in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

In summary, the undersigned concludes that petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of petitioner's claims was debatable or wrong.  Petitioner cannot overcome his procedural default regarding the issues involving testimony about the lineup.  Moreover, petitioner has raised issues of state law.  Petitioner has failed to show prosecutorial error

- 10 -

or that the Michigan Court of Appeals' decision was unreasonable.  Therefore, the undersigned

recommends that the court deny petitioner a certificate of appealability.

> NOTICE TO PARTIES:  Objections to this Report and Recommendation must be
served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of
this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich.
LCivR. 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal
of those issues or claims addressed or resolved as a result of the Report and Recommendation.
*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140
(1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  May 23, 2005